# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBERT LEE COGGIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-302-FHS-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Robert Lee Coggin requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on February 27, 1967, and was forty-five years old at the time of the administrative hearing (Tr. 53). He completed high school and earned a college degree, and has worked as an electrical engineer, software engineer, and computer engineer (Tr. 82). The claimant alleges he has been unable to work since December 18, 2007, due to back problems, depression, anxiety, post-traumatic stress disorder (PTSD), congenital joint disorder, and high cholesterol (Tr. 203-204).

**Procedural History**

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on April 15, 2010. His applications were denied. ALJ Jennie L. McLean conducted an administrative hearing and found that the claimant was not disabled if he stopped substance abuse in a written opinion dated March 1, 2013 (Tr. 25-42). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her final decision at step five of the sequential evaluation. At step

two, she determined that he had the severe impairments of back pain, depression, anxiety, PTSD, and polysubstance abuse in reported remission (Tr. 28). She determined that, based on all those impairments, the claimant retained the residual functional capacity ("RFC") to perform medium work as defined by 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that he could frequently climb stairs and ramps, balance, kneel, crouch, and crawl; occasionally stoop; and he was unable to perform simple tasks with routine supervision, could have no public contact or customer service, was unable to interact appropriately with supervisors and co-workers for work purposes, and able to adapt to work situations (Tr. 31). She thus concluded that the limitations from all his impairments, including substance use disorders, narrowed the range of work so that a finding of disabled was required (Tr. 35). She then made a finding that if the claimant stopped substance abuse, he would retain a medium RFC, except that he could only frequently climb stairs and ramps, balance, kneel, crouch, and crawl; occasionally stoop; could perform simple, some detailed, and some complex tasks with routine supervision; no public contact or customer service; could interact appropriately with supervisors and co-workers for work purposes; and could adapt to a work situation (Tr. 37). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, hardwire assembler, lab equipment cleaner, electronic worker, final inspector, addresser, and bench hand (Tr. 41-42).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly analyze the opinion of his medical providers, including two treating physicians and his counselor; and (ii) improperly determining that substance abuse was a material factor to his disability. The undersigned Magistrate Judge finds that the ALJ did fail to properly evaluate the medical evidence in the record, and the Commissioner's decision should therefore be reversed for further proceedings.

The medical evidence in the record reveals that the claimant was treated at Seton Southwest Healthcare Center August 27-31, 2008, after developing MRSA due to his IV drug use (Tr. 283). In 2008, he was undergoing pain management treatment and tested positive on one drug screen, but negative on the next. His pain management physician believed the positive result could have been due to an abscess secondary to injection and caused the drug to accumulate in soft tissue (Tr. 312) Although the record contains no specific details of the actual events, the claimant made a suicide attempt in 2009, which subsequently led to his arrest after an altercation with police officers who were called to the scene (Tr. 363, 391). Records from the Travis County Sheriff's office indicate that the claimant reported depression and suicidal thoughts several times, and he was referred to a mental health profession for assessment during his incarceration (Tr. 318-402, 404-421, 453-461). Upon intake, the claimant was assessed with a mood disorder, unspecified, episodic, and polysubstance dependence, along with a global assessment of functioning (GAF) score of 45 (Tr. 453).

On June 7, 2010, Beth Jeffries, Ph.D., conducted a mental status examination of the claimant and assessed him with polysubstance abuse in reported remission (Tr. 447-449). It was her opinion that the claimant did not meet the criteria for PTSD, and stated that it was unclear what his drug usage was at the time of the exam (Tr. 449). She believed that even if the claimant was abstaining from drugs, he was at high risk for relapse, and indicated he should abstain from drugs and continue with his current treatment plan or his prognosis would be "considerably worsened" (Tr. 449). She indicated that getting back to work was a possibility for the claimant, noting his high level of education and at least average intelligence (Tr. 449-450).

The following month, a state reviewing physician completed a psychiatric review technique and found the claimant had moderate limitations in activities of daily living, but mild restrictions in maintaining social functioning and maintaining concentration, persistence, or pace (Tr. 481). He then completed a mental RFC, finding that the claimant was moderately limited in the ability to understand and remember detailed instructions and carry out detailed instructions, but that he had sufficient concentration and memory to do simple, repetitive tasks and some detailed or complex tasks, and the ability to undertake a variety of everyday life demands. He found the claimant would be limited in the ability to work with the general public, but could adapt to changes in a familiar environment (Tr. 487).

Following his release from jail, the claimant moved to Oklahoma to live with his parents and also began treatment with Mental Health Services of Southern Oklahoma

(MHSSO). The initial assessment indicated a diagnosis of major depressive disorder, recurrent episode moderate, and PTSD, along with a GAF of 51 (Tr. 424). The claimant's GAF score at MHSSO would range from 51-55 from March 2010 through September 2012 (Tr. 439, 498, 508, 597, 650).

The record includes treatment notes from Evelyn Southers, the claimant's counselor who began treating the claimant in March 2010, and did so on at least a monthly basis (Tr. 543-586, 624-645). On August 25, 2010, she prepared a letter noting the claimant's diagnoses and stating that the claimant "would be ill equipped for gainful employment at this time" (Tr. 497). In support, she stated that the claimant's depression moved to anxiety and anger when he is pressured, which triggered PTSD symptoms and a deterioration of behavior, and she could not predict whether the claimant would reach recovery and stabilization (Tr. 497). She attached a Mental Medical Source Statement (MSS) to this letter, which had a section for evaluating the claimant's mental abilities and attitudes needed to do unskilled work. She indicated that the claimant was unable to meet competitive standards in the areas of: (i) making simple work-related decisions, (ii) completing a normal workday and workweek without interruptions from psychologically based symptoms, (iii) accepting instructions and responding appropriately to criticism from supervisors, (iv) getting along with co-workers or peers without unduly distracting them or exhibiting behavior extremes, (v) responding appropriately to changes in a routine work setting, and (vi) dealing with normal work stress (Tr. 500). She also indicated that the claimant was seriously limited, but not

precluded in six other areas, including maintaining attention for two-hour segments (Tr. 500). In explanation for this assessment, Ms. Southers stated that the claimant "withdraws when he becomes overwhelmed with demands made of him. He has several triggers that cause him to feel threatened and inadequate, which directly affects decision making and interpersonal relationships" (Tr. 500). She also noted that the claimant's experiences in the military had given him triggers that prevented him from having patience or the ability to set goals, and that he experiences paranoia which results in significant inability to interact with others or take direction (Tr. 501). She concluded by stating that she believed the claimant was not capable of managing the demands made of him in order to be gainfully employed, and that his symptoms and recovery status would deteriorate and likely require hospitalization were he to be employed (Tr. 502). The following month, one of the claimant's medication management physicians at MHSSO wrote a letter stating that he believed the claimant was not capable of employment at that time (Tr. 505, 543-586).

Dr. Lawren Meredith also handled the claimant's medication management at MHSSO, and adjusted his medications as needed (Tr. 622-644). Dr. Meredith completed an undated Mental Impairment Questionnaire noting that the claimant had been receiving treatment since February 2010 and had bi-weekly medication management appointments (Tr. 646). Dr. Meredith checked a number of signs and symptoms and noted the claimant had significant impairment with social function, attributing these signs and symptoms to chronic depression which creates a marked impairment in the ability to adapt to a work

environment, resulting in deterioration of behavior (Tr. 646). Dr. Meredith indicated that the claimant's response to medication had been poor due to his PTSD, and treatment and response had been inconsistent (Tr. 647). She anticipated that his impairment would cause him to be absent from work more than three days a month, and that his ability to maintain sustainable employment was limited because his mental impairment was exacerbated by PTSD and chronic pain (Tr. 648). She indicated that he had marked limitations in all three areas of functional limitations, and continual episodes of deterioration which cause the individual to withdraw from that situation or experience exacerbation of signs and symptoms (Tr. 648).

In March 2011, the claimant was admitted to Red Rock Behavioral Health Services following an emergency order of detention and the claimant's presentation with suicidal thoughts and attempted overdose on klonopin (Tr. 719-760). At the time, the claimant had been clean for two years, but had two episodes of sniffing gas and keyboard cleaner within the previous two weeks, then been in jail after threatening his father (Tr. 734). The discharge papers indicated the claimant was stabilized and had made satisfactory progress, but he was considered seriously mentally ill (Tr. 750-752).

At the administrative hearing, the claimant testified that he graduated from college with a degree in electrical engineering, and worked in that field until 2007 when he lost his job due to erratic behavior (Tr. 67-68). He testified that his mental impairments affected his ability to concentrate, and that he has problems keeping track of time, irregular sleeping habits, and general loss of interest (Tr. 71). He further stated that he

had no social life, lived at home with his parents, and spent his days in his bedroom (Tr. 71). He testified that the previous month he had spent five days in his room and had not come out (Tr. 73). As to his altercation with the police that led to his arrest, he testified that he had been attempting suicide by cop (Tr. 74). As to his most recent substance abuse, he testified that he last used cocaine in 2009 prior to his arrest, last used heroin in 2009 or 2010, and that he had attempted suicide by overdose with his prescription medications and through inhaling Freon (Tr. 75). The claimant's father testified at the hearing that the claimant is moody and depressed approximately half of every month and stays in his room a lot, that he had attempted suicide four times since moving in with them in January 2010, and that he and his wife had begun to notice the claimant's behavioral problems in 2007 (Tr. 79-81). The claimant's father testified that he had been diagnosed with cancer and traveling to Houston for treatment, and that the claimant accompanied him on these trips both to help and because he and his wife were afraid to leave him alone (Tr. 80). He also completed a Third Party Function Report (Tr. 236-243).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir.

1995). Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Medical opinions from a treating physician are also entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. § 416.927. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [416.927].'"), *quoting* Soc. Sec. R. 96-2p, 1996 WL 374188, at *4 (July 2, 1996). Finally, if the ALJ decides to reject a treating physician's opinions entirely, "[s]he must . . . give specific, legitimate reasons for doing so[,]" *Watkins*, 350 F.3d at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent

reviewers the weight [she] gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300 [quotation omitted].

Here, the ALJ gave Dr. Meredith's opinion only limited weight because her finding of continuous episodes of decompensation was not supported by the evidence because the claimant had not required repeated periods of inpatient treatment, and the claimant had been traveling with his father for his father's cancer treatments (Tr. 33, 40). This ignores the fact that Dr. Meredith's opinion actually indicated that the "continual episodes" were defined as those which caused the individual to withdraw from that situation or experience exacerbation of signs and symptoms, and not periods of inpatient treatment (Tr. 648). *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin*, 365 F.3d at 1219 (10th Cir. 2004). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'").

The ALJ's treatment of the opinions in the record finding the claimant disabled was likewise deficient. Although the ALJ was not required to give controlling weight to the multiple opinions that the claimant could not return to work, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about

whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), he *was* required to determine the proper weight to give those opinions by applying the factors in 20 C.F.R. § 404.1527. The ALJ simply stated that the finding of disability went to an issue reserved to the Commissioner but did not explain why none of those opinions were persuasive here. *Baca v. Department of Health & Human Services*, 5 F.3d 476, 480 (10th Cir. 1993) ("'Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered.'"), *quoting Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979). *See also Kanelakos v. Astrue*, 249 Fed. Appx. 6, 8 (10th Cir. 2007) ("[T]he ALJ mentioned the VA rating and appropriately stated that the SSA and VA standards differ. But he completely 'fail[ed] to discuss the significance of the VA's disability evaluation.'") [unpublished opinion], *quoting Grogan v. Barnhart*, 399 F.3d 1257, 1262-63 (10th Cir. 2005) ("Although another agency's determination of disability is not binding on the Social Security Administration, 20 C.F.R. § 416.904, it is evidence that the ALJ must consider and explain why he did not find it persuasive."), *citing Baca*, 5 F.3d at 480. This is particularly important where, as here, there were numerous statements by Dr. Meredith and Ms. Souther, but the ALJ found them all unpersuasive in light of state reviewing opinions that did not even acknowledge those findings. Instead, the ALJ disregarded such statements as not fully consistent with the medical evidence of record and because the claimant had reported that he did not want to perform work beneath him. *See*

*Langley,* 373 F.3d at 1119. *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). The ALJ thus improperly evaluated the multiple opinions in the record by treating sources and the claimant's counselor that he was disabled.

Social Security regulations likewise provide for the proper consideration of "other source" opinions such as that provided by Ms. Souther herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 (Aug. 9, 2006) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a

source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. § 404.1527(d). The ALJ did not even mention this regulation in her opinion and made no reference whatever to these factors in connection with the evaluation by Ms. Souther, and it is therefore unclear whether she considered any of them. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original]. Instead, the ALJ inexplicably only credited her opinion as applying when the claimant was on drugs, because he had maintained a consistent work history prior to his abuse of drugs (Tr. 34, 40). Not only does this ignore evidence in the record that the claimant began using drugs at the age of 18 and likely lost his job as a result of his drug use, but it ignores the fact that the claimant was clean during most of her treatment time, and the fact that her assessments were based on supposition that the claimant was off drugs at the time but was nevertheless unable to return to employment. *See, e. g., Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") *citing Vincent ex rel. Vincent v. Heckler*, 739 F.3d 1393, 1394-1395 (9th Cir. 1984).

Last, the ALJ erred in her analysis of the claimant's father's Third Party Function Report and testimony. Social Security Ruling 06-03p provides the relevant guidelines for

the ALJ to follow in evaluating "other source" opinions from non-medical sources who have not seen the claimant in their professional capacity. *See* 2006 WL 2329939. Soc. Sec. Rul. 06-03p states, in part, that other source opinion evidence, such as those from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: (i) nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to support or refute the evidence. *Id.*, 2006 WL 2329939, at *5-6. The ALJ mentioned the Third Party Function Report, but gave it "some limited weight," because the claimant went to Narcotics Anonymous meetings and the grocery store, despite reports that the claimant stayed in his room most of the time (Tr. 41). Not only are those two pieces of information not contradictory, the ALJ wholly failed to properly evaluate this opinion evidence in accordance with the factors set out in Soc. Sec. Rul. 06-03p.

Because the ALJ failed to properly assess the evidence in determining the claimant's RFC, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the claimant's RFC. If on remand there is any adjustment to the claimant's mental RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the

ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

    **DATED** this 10th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**